42016. WARD v. HUDCO LOAN COMPANY.
(328 SE2d 729)

MARSHALL, Presiding Justice.

On May 27, 1983, the appellant-plaintiff filed the present complaint seeking to enjoin the appellee-defendant from foreclosing on real estate pledged as collateral under a 1978 security deed. The 1978 security deed was taken in connection with the refinancing of a 1976 loan together with a security deed. Although both security deeds were labeled as secondary security deeds, they were in fact first security deeds on the subject properties. The superior court granted the appellee-defendant's motion to dismiss.

In this appeal, the appellee concedes that the notes secured by the security deeds in question exceeded the allowable interest under former law; however, the appellee argues that the overcharges were the result of clerical error, inadvertence, or a trifling excess. *Sumner v. Adel Banking Co.*, 244 Ga. 73 (2a) (259 SE2d 32) (1979) and cits.; *Williams v. First Bank &c. Co.*, 154 Ga. App. 879 (4) (269 SE2d 923)

(1980) and cits. We affirm the trial court's dismissal of the complaint on the ground that the security deeds in question are governed by a 1983 Act of the General Assembly authorizing the parties on any loan secured by an interest in real estate to contract in writing for "any rate of interest, expressed in simple interest terms . . . where the principal amount involved is more than $3,000." OCGA § 7-4-2 (a) (1) (Ga. L. 1983, pp. 1146, 1147-1148, § 1). Both the 1976 and the 1978 security deeds were pledged as collateral for loans exceeding $3,000.

1. Under the 1983 Act, OCGA § 7-4-2 (a) (1) provides, "The legal rate of interest shall be 7 percent per annum simple interest where the rate percent is not established by a written contract. Notwithstanding the provisions of other laws to the contrary, except Code Section 7-4-18, the parties may establish any rate of interest, expressed in simple interest terms as of the date of the evidence of the indebtedness, and charges and any manner of repayment, prepayment, or, subject to the provisions of paragraph (1) of subsection (b) of this Code section, acceleration, agreed upon in writing by the parties where the principal amount involved is more than $3,000.00 or where the lender or creditor has committed to lend, advance, or forbear with respect to any loan, advance, or forbearance to enforce the collection of more than $3,000.00. Nothing contained in this subsection shall be construed to prohibit the computation and collection of interest at a variable rate or on a negative amortization basis or on an equity participation basis or on an appreciation basis." OCGA § 7-4-18 (a) generally prohibits any person from charging any rate of interest greater than 5% per month.

2. In early decisions of this court, it was held that a repeal of the usury laws did not apply retroactively to contracts entered into before the date of the repeal. *Broach v. Kelly*, 71 Ga. 698 (2) (1883); *Campbell & Jones v. Murray*, 62 Ga. 86 (5) (1878); *Shealy v. Toole*, 56 Ga. 210 (5) (1876). However, under the equitable principle that he who would have equity must do equity, it was also held that a usurious loan would not be canceled without tender of the principal amount of the loan as well as the lawful interest. *Campbell & Jones v. Murray*, supra, (6). In later decisions, it was held that where the legislature enacted laws ameliorating the penalty for usury, such laws did not apply retroactively to loans made before the effective date of the laws. *Maynard v. Marshall*, 91 Ga. 840 (2) (18 SE 403) (1893); *Long v. Gresham*, 148 Ga. 170 (2) (96 SE 211) (1918). These later decisions were based, at least in part, on the rationale that since the legislature did not abolish the laws making the loans usurious, the legislature did not intend the amended penalty statutes to apply retroactively. *Maynard v. Marshall*, supra, 91 Ga. at 845-846; *Long v. Gresham*, supra, 148 Ga. at 173-174. The previously cited decisions were also based on the constitutional prohibition against retroactive laws, as well as a

historical aversion to usury. Id.; also *West v. Dorsey*, 248 Ga. 790, 792 (285 SE2d 703) (1982), citing *Union Savings Bank &c. Co. v. Dottenheim*, 107 Ga. 606, 610 (34 SE 217) (1899).

3. However, in later years, there has been a change in the view that retroactive operation cannot be given to statutes lifting the penalty for usury, and, to an extent, the historical aversion to usury has given way to an aversion to harsh penalty statutes for usury being invoked by borrowers seeking to avoid payment of their bargained-for debts.

In *Southern Discount Co. of Ga. v. Ector*, 246 Ga. 30 (268 SE2d 621) (1980), this court addressed the question of whether retrospective operation was to be given to a provision in the 1978 amendment to the Industrial Loan Act, Ga. L. 1978, pp. 1033, 1034 (OCGA § 7-3-29 (f)) providing the lender with a good-faith defense to violations of the Industrial Loan Act. Prior to the 1978 amendment, the penalty for usurious loans under the Industrial Loan Act had been the forfeiture of all interest and other charges but not the principal amount of the loan. In *Ector*, the Court of Appeals had held that the 1978 amendment should not be given retrospective operation because of an absence of language in the 1978 amendment requiring such application. On certiorari, we reversed, holding that, "Forfeitures and penalties are not favored. Courts should construe statutes relieving against forfeitures and penalties liberally so as to afford maximum relief. Such a construction of the Act does not bring it into conflict with our constitution since a person has no vested rights to a forfeiture or penalty. *Summerour v. Cartrett*, 220 Ga. 31, 32 (136 SE2d 724) (1964); *Roby v. Newton*, 121 Ga. 679, 682 (49 SE 694) (1904); *Renfroe v. Colquitt*, 74 Ga. 618 (2a) (1885); *O'Kelly v. Athens Mfg. Co.*, 36 Ga. 51 (1867); 36 AmJur2d 629, Forfeitures & Penalties, § 26; 37 CJS 8, Forfeitures, § 4 (b). Cf. *Maynard v. Marshall*, 91 Ga. 840 (18 SE 403) (1893), in which the penalty merely was ameliorated rather than lifted by the subsequent legislation." 246 Ga. at 30-31.

In *Fountain v. Dixie Finance Corp. of Ga.*, 252 Ga. 543 (314 SE2d 906) (1984), we held that the 1982 Amendment to the Secondary Security Deeds Act, Ga. L. 1982, pp. 488, 492, § 8, and the 1983 repeal of the usury provisions of the Secondary Security Deeds Act, Ga. L. 1983, pp. 1146, 1152, § 8 (b), were to be applied retroactively to a loan entered into before the effective dates of the legislation, where the defense of usury was not raised until after the legislation became effective. In *Fountain*, we stated:

"A statute prohibiting usury is, 'in its nature, a penal statute inflicting upon the lender a loss and forfeiture to that extent. Such has been the general, if not uniform, construction placed upon such statutes. And it has been quite as generally decided that the repeal of such laws, without a saving clause, operated retrospectively, so as to

cut off the defense for the future, even in actions upon contracts previously made. And such laws, operating with that effect, have been upheld, as against all objections on the ground that they deprived parties of vested rights, or impaired the obligation of contracts . . . (Cits.) . . . (a)nd these decisions rest on solid ground. Independent of the nature of the forfeiture as a penalty, which is taken away by a repeal of the act, the more general and deeper principle on which they are to be supported is, that the right of a defendant to avoid his contract is given to him by statute, for purposes of its own, and not because it affects the merits of his obligation; and that whatever the statute gives, under such circumstances, so long as it remains *in fieri*, (in process of formation or development; incomplete or inchoate) and not realized by having passed into a completed transaction, may, by a subsequent statute, be taken away. It is a privilege that belongs to the remedy, and forms no element in the rights that inhere in the contract. The benefit which he has received as the consideration of the contract, which, contrary to law, he actually made, is just ground for imposing upon him, by subsequent legislation, the liability which he intended to incur . . . The right which the curative or repealing act takes away in such a case is the right in the party to avoid his contract, a naked legal right which it is usually unjust to insist upon, and which no constitutional provision was ever designed to protect.' *Ewell v. Daggs*, 108 U. S. 143, 150-151 (2 SC 408, 27 LE 682) (1883).

"The defense of usury is not, in most instances, a bargained-for element of the agreement. It is, rather, as pointed out above, 'a privilege that belongs to the remedy,' coming into play only when the borrower seeks to assert it as a defense. The fact that the legislature elects to impose a penalty for usury does not go to the merits of the contract. 'Under most usury statutes, therefore, it is held that the repealing statute validates, expressly or by implication, an antecedently unenforceable bargain.' 6A *Corbin on Contracts*, § 1532, pp. 802-3 (1962). See also Calimari, *Contracts*, § 387, p. 579 (1970); *Southern Discount Co. of Ga. v. Ector*, 246 Ga. 30 (268 SE2d 621) (1980)." 252 Ga. at 543-544.

4. At the time of the loans in question here, Georgia law provided that interest on first mortgage real estate loans could be computed in two ways. Under former Code Ann. § 57-101.1; Ga. L. 1970, p. 1974 (former OCGA § 7-4-3), 9% simple interest could be charged. In 1977, Code Ann. § 57-101.1 was amended to provide that 10% simple interest could be charged. Ga. L. 1977, pp. 1221, 1222. Under former Code Ann. § 57-116; Ga. L. 1976, p. 1197 (former OCGA § 7-4-4), 7% add-on interest could be charged. The penalty for overcharge of the interest on first mortgages was forfeiture of the entire interest so charged or taken, or contracted to be reserved, charged, or taken. Former Code Ann. § 57-112 (former OCGA § 7-4-10).

In March of 1983, the law regarding interest rates on residential mortgage loans was changed substantially. OCGA § 7-4-2 was rewritten. As previously stated, as rewritten, subsection (a) (1) of OCGA § 7-4-2 now provides that on any loan in excess of $3,000 the parties may establish any rate of interest expressed in simple interest terms as may be agreed on by the parties.

5. In this case, the defense of usury was not raised until after the 1983 amendment to OCGA § 7-4-2 became effective. The interest rates on the loans in question here are legal under § 7-4-2 (a) (1). Therefore, the trial court did not err in dismissing the complaint.

*Long v. Gresham,* supra, *Maynard v. Marshall,* supra, *Shealy v. Toole,* supra, *Campbell & Jones v. Murray,* supra, and *Broach v. Kelly,* supra, are disapproved to the extent that they conflict with more recent decisions of this court, including our decision herein.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 30, 1985.

*Gloria A. Einstein, Paula S. Kauffman,* for appellant.
*Dennis J. Strickland, Sr.,* for appellee.